UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NATIONWIDE AGRIBUSINESS
INSURANCE COMPANY,

        Plaintiff,

FRANSISCO ALCALA,

        Involuntary Plaintiff,

                                            Case No. 12-C-1227

    -vs-

MELLER POULTRY EQUIPMENT, Inc. and
MELLER ANLAGENBAU GMBH,

        Defendants.

## DECISION AND ORDER

Francisco Alcala fell through a platform while working at the S&R Egg Farm facility in Palmyra, Wisconsin The platform was designed by the defendants, a Canadian corporation and a German corporation, collectively referred to as "Meller." In this lawsuit, S&R's workers compensation insurer, Nationwide Agribusiness Insurance Company, is pursuing subrogated claims against Meller. Now before the Court are two issues related to discovery.

First, the parties submitted briefs regarding their disagreement over the appropriate deadline for fact discovery. Meller argues that fact discovery should stop before expert discovery starts because ongoing fact discovery would invite wasteful

supplemental expert reports that increase the expense of litigation. Nationwide wants fact discovery to continue while expert discovery is ongoing, but at this stage of the proceedings, Nationwide has no idea if it will actually need to conduct additional fact discovery in response to Meller's experts. Therefore, the Court will adopt the discovery schedule proposed by Meller. Nationwide can always move to re-open fact discovery if it can establish "good cause." Fed. R. Civ. P. 16(b)(4).

Second, Meller moves to compel the production of certain witness statements and an incident report, which Nationwide claims are protected work product. "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent." Fed. R. Civ. P. 26(b)(3)(A). As the Court noted just over a year ago, the "key phrase in the rule is whether the documents were produced 'in anticipation of litigation.'" *Farr v. Paikowski*, No. 11-C-789, 2012 WL 3150291, at *1 (E.D. Wis. July 31, 2012). "Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation." *Binks Mfg. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118-19 (7th Cir. 1983) (emphasis in original).

In the insurance context, the following formulation regarding the work product

privilege is persuasive:

> Fed. R. Civ. P. 26(b)(3) requires that a document or thing produced or used by an insurer to evaluate an insured's claim in order to arrive at a claims decision in the ordinary and regular course of business is not work product regardless of the fact that it was produced after litigation was reasonably anticipated. It is presumed that a document or thing prepared before a final decision was reached on an insured's claim, and which constitutes part of the factual inquiry into or evaluation of that claim, was prepared in the ordinary and routine course of the insurer's business of claim determination and is not work product. Likewise, anticipation of litigation is presumed unreasonable under the Rule before a final decision is reached on the claim. The converse, of course, is presumed for documents produced after claims denial. To overcome these presumptions, the insurer must demonstrate, *by specific evidentiary proof of objective facts*, that a reasonable anticipation of litigation existed when the document was produced, *and that the document was prepared and used solely to prepare for that litigation, and not to arrive at a (or buttress a tentative) claim decision*.

*Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 663-64 (S.D. Ind. 1991) (emphases added). In other words, because it is "reasonable to assume that a reasonable insurer would make a claims decision only after it possessed the minimum amount of information it required to make that decision," courts will "presume that documents which were produced by an insurer for concurrent purposes before making a claims decision would have been produced regardless of litigation purposes and therefore do not constitute work product." *Stout v. Ill. Farmers Ins. Co.*, 150 F.R.D. 594, 605 (S.D. Ind. 1993). The presumption can be overcome by "specific evidentiary proof of objective facts to the contrary." *Id.*

The Court presumes that litigation was reasonably anticipated simply as a result of the accident that injured Alcala. Floors should not just collapse under the

- 3 -

weight of one man.  However, it is apparent, although not explicitly admitted by Nationwide, that the documents and statements at issue were all generated before Nationwide decided to pay Alcala's claim.  Thus, in the language of the *Harper* decision, Nationwide must demonstrate that the documents Meller is seeking were "prepared and used *solely* to prepare for that litigation, and not to arrive at a (or buttress a tentative) claim decision."  Despite its best efforts, Nationwide has failed to meet this burden.

Nationwide provided the affidavit of Renata Schuch, the adjuster who is handling Alcala's workers compensation claim.  Shuch's affidavit essentially concedes that the "sole purpose" standard has not been met.  For example, she avers as follows:

> [I]n certain other cases, including particularly this case where at all times the circumstances of the injury raised the prospect of litigation over [Nationwide's] subrogation interests, the primary *purposes* of obtaining the injured worker's statement are more varied and the prospect of litigation took on a fundamental level of importance.  One purpose, obviously, for taking Mr. Alcala's statement was simply to obtain information about the event so that *next steps can be taken with respect to the claim*, both for litigation purposes *and for the purposes of handling the workers compensation claim*.

Schuch Aff., ¶ 9 (emphases added).  Similarly, Schuch concedes that the "*first* primary purpose" in interviewing Thomas Mendez, Alcala's supervisor, "was to investigate the accident to determine claims and defenses in any case that might be filed against [Nationwide] or [its] insured by Mr. Alcala."  *Id.*, ¶ 11 (emphasis added).  The existence of multiple purposes defeats the claim of privilege with respect to these documents.

- 4 -

Schuch also avers that the statement of Jesus Rivera "most likely would not have been obtained but for the likelihood that litigation would occur arising out [of] Mr. Alcala's injuries. It is not routine for [Nationwide] to take a co-employee's statement with respect to workers' compensation claims." *Id.*, ¶ 15. Simply because this interview was unusual, or even that it would not have been taken but for the likelihood of prospective litigation, does not demonstrate that it was taken for the sole purpose of aiding in that litigation. Again, Alcala's workers' compensation claim was still outstanding, so claim adjustment was a presumptive motivating factor.

Finally, Nationwide sought information from S&R concerning "'the company name that was responsible for erecting the second floor structure, when it was done,' among other information." *Id.*, ¶ 12. In response, S&R "furnished a confidential statement of investigation, in which it . . . specifically notes that the report is for [Nationwide's] 'investigation and potential litigation against Meller.'" *Id.*, ¶ 13. This vague description of the report's content is not enough to meet Nationwide's burden under the sole purpose test articulated above. That said, Nationwide insists that if there is any doubt about the nature of this report (and, for that matter, the statements discussed above), the Court should conduct an *in camera* review. If Nationwide still thinks that it is entitled to the privilege, even in light of the foregoing discussion, the Court will conduct an *in camera* review at Nationwide's request. Subject to that possibility, Meller's motion to compel will be granted.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. The Scheduling Order, ECF No. 24, is amended as follows. The deadline for fact discovery is **February 28, 2014**. The deadline for expert discovery is **June 13, 2014**; and

2. Meller's motions to compel [ECF No. 27] and to supplement [ECF No. 32] are **GRANTED**. If Nationwide wants the Court to conduct an *in camera* review of the documents at issue in ECF No. 27, it should submit those documents under seal within **ten (10) days** of the date of this Order.

Dated at Milwaukee, Wisconsin, this **29th** day of August, 2013.

                                                   **BY THE COURT:**

                                                   *Rudolph T. Randa*
                                                   **HON. RUDOLPH T. RANDA**
                                                   **U.S. District Judge**