**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**NATIONWIDE AGRIBUSINESS INSURANCE COMPANY,**

Plaintiff,

**FRANSISCO ALCALA,**

Involuntary Plaintiff,

**-vs-** **Case No. 12-C-1227**

**MELLER POULTRY EQUIPMENT, Inc., and MELLER ANLAGENBAU GMBH,**

Defendants.

---

**DECISION AND ORDER**

---

This matter comes before the Court on Nationwide Agribusiness Insurance Company's motion for sanctions against the defendants, collectively known as Meller. Nationwide, joined by the involuntary plaintiff, Fransisco Alcala, argues that Meller and its counsel should be sanctioned for misrepresenting the amount of insurance coverage available to satisfy any potential judgment in this case. Nationwide's motion is granted to the extent discussed herein.

## I. Background

Alcala worked for S&R Egg Farms in Palmyra, Wisconsin. He was

seriously injured when he fell from a catwalk designed and manufactured by Meller. Nationwide is S&R's worker's compensation insurance coverage provider. Meller is insured by a German company called Allianz Versicherung AG.

This is a direct action for third-party liability under Wis. Stat. § 102.29. Nationwide explains that it is relatively uncommon for insurance companies to serve as lead plaintiff in third-party cases because a workers' compensation insurer has a statutory right to the injured worker's recovery. In this case, however, Nationwide asserts that Alcala's damages could reach as much as four million dollars, and as discussed herein, Meller represented that it was insured for up to 7.5 million euros. Thus, Nationwide chose to pursue the claim instead of abandoning its participation and relying on Alcala to make the recovery. *See Nelson v. Rothering*, 496 N.W.2d 87, 90 (Wis. 1993) (§ 102.29(1) "ensures that the employee receive at least one-third of any third-party proceeds after costs and collection fees and that the compensation insurer be reimbursed as fully as possible from the remainder of the sum collected, with any balance going to the employee").

On May 17, 2013, Meller made the following representation in its initial disclosures: "Liability coverage is provided to Meller by Allianz

Versicherung AG. This coverage is adequate to cover the damages apparently at issue in this case." Nationwide requested additional information about insurance coverage during the course of discovery, including a copy of the insurance policy. Allianz, which is based in Munich, informed Meller's counsel, Arnd N. von Waldow, that the policy was stored in the company's archives in Hamburg, was not readily available, and would take an unknown time to retrieve.

Allianz did, however, produce a Certificate of Insurance. The Certificate, written in English, provides in pertinent part: "We hereby confirm that … Meller … is insured with Allianz …" "The insurance covers legal liability of the policy-holder in respect of bodily injury and property damage subject to the limits and conditions of the above named insurance contract." "**The limits of indemnity are** for bodily injury and property damage (combined single limit) € 7.500.000 (in EUR)." Meller specifically referenced the Certificate of Insurance in response to Nationwide's interrogatory requesting insurance information. *See* Affidavit of Brett Beattie, ¶ 8.[1]

---

[1] "**INTERROGATORY NO. 17:** For each policy of insurance (whether liability, 'umbrella', excess coverage or other insurance) by or through which you were or may be insured or covered in any manner state the following: a. Identify the company or companies issuing such policies; b. The policy number and nature of coverage for each such policy; c. Identify all insured(s) under each such policy; d. The limits of liability of

Almost a year later, on July 28, 2014, Allianz informed von Valdow that its initial coverage position was incorrect and that Meller's insurance policy provided coverage for defense costs but *not liability* for accidents occurring in the United States. Meller's counsel received a copy of the policy from Allianz on August 13. The next day, Meller supplemented its initial disclosures and provided a copy of the policy, written entirely in German: "**INSURANCE INFORMATION** 1. Insurance coverage is provided to Meller according to the terms of the insurance policy attached hereto as Exhibit 1."

Almost another full year passed until the parties engaged in mediation on June 3, 2015. In the lead-up to mediation, Nationwide's attorney, Brett Beattie, indicated that he would not participate in the absence of a representative from Allianz. In response, von Waldow assured Beattie that he would have full settlement authority in light of his long-standing working relationship with Allianz. Nationwide agreed to proceed with mediation.

---

each such policy; e. Whether you have received any communication from such company or companies, their agents or employees that you will or will not be afforded coverage under such policies and, if so, the substance of such communication; and f. Identify all documents in support of your Answer. **<u>ANSWER TO INTERROGATORY NO. 17</u>: … Subject to and without waiving the foregoing objections, Meller responds as follows: See Certificate of Insurance Meller has produced."**

Mediation was unsuccessful,[2] but the parties continued discussing settlement thereafter. In late August, Alcala's counsel, James Carney, informed Beattie that Mr. von Waldow stated to him that there was no insurance coverage available in this case. Beattie confronted Meller's counsel about this assertion and demanded a copy of the policy in English. Meller's counsel responded that he "regret[ted] the confusion," but as von Waldow understood it from the insurer, "Meller's coverage in the US is only for defense costs but not for liability." Beattie Declaration, ¶ 20. Meller's counsel also stated that he produced the policy as it was kept in the regular course of business and that no English copy exists.

The parties continued their back-and-forth, and in late September, von Waldow told Nationwide that Meller declined an offer of insurance that would have provided coverage for United States injuries. Meller's counsel also stated that an English-language version of the policy does not exist and that Meller will not produce the terms in English. Mr. von Waldow contended that Nationwide should pay to have the policy translated.

In October, the parties filed and briefed their respective motions in limine, but at the end of October, Nationwide moved for sanctions. The

[2] At the mediation, von Waldow made what Nationwide's counsel described as a "brief attempt" to claim that there was not € 7.5 million of coverage, but Beattie did not perceive at this time that insurance coverage was in doubt. Beattie Declaration, ¶ 15.

Court canceled the trial, scheduled to begin on December 7, in order to give further consideration to the sanctions motions.

## II. Analysis

"Courts have the power, and the responsibility, to advance the orderly and expeditious disposition of a case. When a party flouts a Court's authority to do so, the Court may take action, under either its inherent powers or by virtue of the Federal Rules of Civil Procedure." *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 374 (S.D. Ind. 2009). The inherent power to sanction is a "residual authority, to be exercised sparingly and only when other rules do not provide sufficient basis for sanctions, …" *Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609, 614 (7th Cir. 2006). Therefore, the Court will look first to specific fonts of authority, with inherent authority serving as a backdrop. *See United States v. Johnson*, 327 F.3d 554, 563 (7th Cir. 2003) ("Generally, the harshest of sanctions based on inherent powers have been upheld only in situations involving bad faith, contumacy, or egregious misconduct").

Specific authority is found in 28 U.S.C. § 1927, which provides that "[a]ny attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably

incurred because of such conduct." An attorney's conduct is unreasonable and vexatious if he acts with either subjective or objective bad faith. *Dal Pozzo*, 463 F.3d at 614. The standard for objective bad faith "does not require a finding of malice or ill will; reckless indifference to the law will qualify." *Id.* "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Riddle & Assocs. P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005).[3]

Specific authority is also found in the Federal Rules of Civil Procedure. For example, under Rule 26, no attorney may sign a discovery response or initial disclosure that the attorney knows or reasonably should know is "interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 26(g)(1)(B)(ii). If an attorney violates this rule, the Court "must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3). This analysis mirrors the standard for sanctions

---

[3] Section 1927 authorizes sanctions against individual lawyers, but not law firms. *United Stars Indus., Inc. v. Plastech Engineered Prods., Inc.*, 525 F.3d 605, 609 (7th Cir. 2008).

under Rule 11. *Manarin v. Fairbanks Co.*, 122 F.R.D. 513, 517 (N.D. Ill. 1988). It "is not enough that the attorneys' subjective belief and purpose are innocent; it is also necessary that such mental state is based upon reasonable inquiry, objectively analyzed, into the basis for the facts alleged and into the law." *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1270 (7th Cir. 1993); *see also Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir. 1994) ("We determine whether a party's conduct was imposed for an improper purpose by an objective standard"); *Fed. Deposit Ins. Corp. v. Tekfen Const. & Installation Co., Inc.*, 847 F.2d 440, 442 (7th Cir. 1988) (test is "one of objective reasonableness under all the circumstances of the case").

Similarly, sanctions can be awarded against a party for failing to provide information required by the initial disclosure provisions. Fed. R. Civ. P. 26(a); Fed. R. Civ. P. 37(c)(1). Sanctions under Rule 37 are premised upon a finding of "willfulness, bad faith, or fault." *Am. Nat'l Bank & Trust Co. v. Equitable Life Assur. Soc'y of the U.S.*, 406 F.3d 867, 877 (7th Cir. 2005). Fault in this context also means objective unreasonableness. *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992) (fault describes "the reasonableness of the conduct – or lack thereof – which eventually culminated in the violation"). Rule 37(c) applies to parties, not

attorneys, but "any conduct of an attorney which would be sanctionable under Rule 37(c) if the attorney were a party may, however, be sanctionable under Rule 26(g)." *Ins. Benefit Adm'rs, Inc. v. Martin*, 871 F.2d 1354, 1360 (7th Cir. 1988).

Rule 26 has long allowed the discovery of insurance coverage, and in 1993, information about insurance coverage became the subject of mandatory initial disclosure. Fed. R. Civ. P. 26(a)(1)(A)(iv); 8 Wright & Miller Fed. Practice and Procedure § 2010 (3d ed. 2011). The purpose behind the disclosure of insurance coverage is to provide information to allow counsel to make a "realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation. It will conduce to settlement and avoid protracted litigation in some cases, *though in others it may have an opposite effect*." Fed. R. Civ. P. 26(b)(2), Advisory Committee Notes (1970) (emphasis added). In this case, it had the opposite effect.

Plaintiffs argue that Meller and its counsel should be sanctioned for misrepresenting the amount of insurance coverage at the outset of this case. The Court does not agree. Meller was simply relaying Allianz's stated coverage position. This was a reasonable course of action under the circumstances. Previously, the Court observed that the record was unclear

as to whether Meller knew that the Allianz policy did not provide coverage for injuries in the United States. ECF No. 141.[4] Subsequently, Meller submitted evidence which demonstrates that it did not know about the possible lack of insurance coverage until 2014. ECF No. 143, Declaration of Jan Kreyer, Meller's General Manager. Therefore, the Court finds that Meller should not be sanctioned for initially disclosing that the Allianz policy provided coverage for Alcala's injuries.

What happened later, however, was clearly sanctionable. Meller argues that it was reasonable to supplement its initial disclosure by stating that coverage is "provided to Meller according to the terms of the insurance policy attached hereto." This disclosure must be read in combination with what came before it: Meller's initial disclosure that insurance coverage was "adequate," and Meller's response to Nationwide's interrogatory that specifically referred to the Certificate of Insurance. In this context, use of the phrase "coverage is provided" simply reads as a confirmation of the previous disclosures, and the only reason for the supplementation would seem to be that Meller finally received a copy of the policy from Allianz. Tellingly, Meller never corrected its representation about the adequacy of

[4] The Court was forced to cancel a scheduled hearing on this issue due to a medical emergency. The Court now finds that it is not necessary to reschedule the hearing.

coverage. At minimum, Meller's supplement was incredibly misleading, especially because the attached policy was written in German. This course of action was objectively unreasonable.

As for the nature of the sanction, the plaintiffs wouldn't have expended substantial resources if they had known that insurance coverage was in doubt, but as the Court already explained, Meller cannot be faulted for relying on Allianz's initial coverage position. When Meller discovered the change in coverage positions in July of 2014, much of the case had already been "worked-up." At that point, discovery was almost closed and the case was nearing a trial-ready posture. At the same time, if plaintiffs knew about the change in July of 2014, they likely would have altered their strategy. For example, it seems clear that plaintiffs would not have wasted their time with mediation. On the other hand, plaintiffs probably would have resisted summary judgment, but maybe not. Perhaps the plaintiffs would have abandoned this litigation entirely, or perhaps Nationwide would have reverted back to relying on Alcala to pursue his own recovery, the typical process for § 102.29 proceedings.

Ultimately, the Court concludes that Meller and Meller's counsel should be sanctioned an amount that compensates the plaintiffs for their reasonable expenses, including attorney's fees, caused by Meller's failure to

correct its insurance coverage disclosures in July of 2014. *See* Fed. R. Civ. P. 37(c)(1)(A); Rule 26(g)(3). The parties should attempt to negotiate an amount that effectuates the Court's ruling. If the parties cannot reach an agreement, the plaintiffs' briefs on the issue are due within **thirty (30) days** of the date of this Order. Briefing will proceed thereafter according to the local rules.

Also pending are the parties' motions in limine. The Court will set a status conference to discuss a new trial date when the Court rules on those motions.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** Nationwide's motion for sanctions [ECF No. 124] is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 22nd day of January, 2016.

**SO ORDERED:**

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**