# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**NATIONWIDE AGRIBUSINESS
INSURANCE COMPANY,**

                Plaintiff,

**FRANSISCO ALCALA,**

                Involuntary Plaintiff,

        -vs-                    **Case No. 12-C-1227**

**MELLER POULTRY EQUIPMENT, Inc., and
MELLER ANLAGENBAU GMBH,**

                Defendants.

---

## DECISION AND ORDER

---

Fransisco Alcala, the involuntary plaintiff, fell from a catwalk in a chicken coop at S&R Egg Farms. The structure was designed and manufactured by a German company called Meller. Nationwide Agribusiness Insurance Company paid and continues to pay Alcala's workers' compensation benefits pursuant to an insurance policy issued to S&R. Nationwide brought this third-party liability action against Meller, alleging claims for breach of warranty, negligence, and strict liability. The Court granted Meller's motion for summary judgment on the warranty claims, but denied summary judgment on the strict liability and negligence

claims. 2015 WL 998331. Now before the Court are a series of motions *in limine* brought by Nationwide, Alcala, and Meller in advance of trial. These motions are resolved as follows.

## Nationwide's motions *in limine*

## I.   Speculation that a grate on the catwalk was not in place.

The Court understands this motion as referring to the catwalk portion of the chicken coop. *See* ECF No. 106-3. It appears to the Court that there were a series of grates that created the walkway/catwalk. Meller posits that a missing or misplaced grate could have caused Alcala's fall.

The basis for this motion is perplexing. Evidence cannot be excluded simply because it hurts a party's case; that is not "prejudice" in the sense envisioned by Rule 403. Indeed, the Court does not agree about the absence of evidence to support Meller's theory. For example, Alcala testified that he felt no resistance as he fell, and workers occasionally moved the grates, creating the possibility that one was missing. However implausible, this is an issue of fact for the jury to sort through.

## II.   Evidence besmirching the safety character of S&R Egg Farms.

Nationwide argues that Meller should be precluded from offering evidence of (1) other accidents or incidents involving S&R or its employees;

- 2 -

(2) a poor safety character, unsafe work environment, or other evidence besmirching S&R's safety environment; and (3) safety violations by S&R before or after the incident. *See* Fed. R. Evid. 404 (Character evidence). Meller counters that it is not seeking to introduce evidence that S&R acted in conformity with an unsafe character with respect to Alcala's injury. Instead, Meller argues that it should be allowed to introduce evidence that S&R knew that its employees, including Alcala, worked on elevated improvised wooden platforms without fall protection. Fed. R. Evid. 404(b)(2) (other act evidence "may be admissible for another purpose," including knowledge). Neither the use of improvised platforms nor S&R's knowledge of their use is relevant to the salient issue in this case: whether Alcala's injuries were caused by a defective chicken coop. Alcala did not fall while he was sitting on an improvised platform. Therefore, this evidence must be excluded as irrelevant and as improper character evidence.

## III.    Computer simulations.

Nationwide moves to bar evidence of or testimony based upon computer modeling of the accident conducted by Meller's expert, Dr. Albert Karvelis. Meller never produced the underlying data or the computer simulation used by Dr. Karvelis. Fed. R. Civ. P. 26(b)(2)(B). In fact, counsel for Meller affirmatively blocked Nationwide's attempt to see the data

- 3 -

during Dr. Karvelis' deposition. Dr. Karvelis' expert report included pictures from the modeling, but as he explained at his deposition, "I can't put a computer program on paper." In response, Meller deflects and states that Nationwide could obtain the software on its own behalf (for free) via download, but this is unsatisfactory because it would not reflect the thought process behind Dr. Karvelis' use of the computer model. Ultimately, Nationwide was entitled to see Dr. Karvelis use the computer simulation and cross-examine him about its use. This never happened. Therefore, the evidence must be excluded. Fed. R. Civ. P. 37(c)(1).

**IV.-V. Violation of OSHA regulations by Alcala or S&R.**

OSHA's duty to provide a safe workplace applies to employers for the benefit of its employees. *Burnett v. A. Bottacchi S.A. de Navegacion*, 882 F. Supp. 1050, 1054 (S.D. Fla. 1994). Thus, a purported OSHA violation cannot defeat a claim for liability against a third party such as Meller. *Kuta v. Newberg*, 600 N.W.2d 280, 285 (Iowa 1999) ("OSHA standards are adopted for the protection of employees and should not be applied to defeat an employee's claim against a third party").

In response, Meller argues that the Court should backtrack and rule that the opinion of Nationwide's expert, Michael Wright, is inadmissible because it draws upon OSHA regulations. The Court's previous ruling

Case 2:12-cv-01227-RTR   Filed 05/05/16   Page 4 of 29   Document 150

recognized, at least implicitly, that OSHA regulations are relevant to a *manufacturer's* duty to provide a safe product. *See, e.g., Del Cid v. Beloit Corp.*, 901 F. Supp. 539, 548 n.7 (E.D.N.Y. 1995) ("compliance or lack of compliance" with OSHA regulations "is not dispositive of the issue of design defect, but is merely some evidence of such a defect") (collecting cases); *Dominguez v. Excel Mfg. Co. Inc.*, No. C-09-03611 EDL, 2010 WL 4698739, at *4 (N.D. Cal. Nov. 8, 2010) ("OSHA directives can be considered for purposes of establishing the standard of care required by the manufacturer in the design and manufacture of its product, …"). Therefore, Meller's counterargument regarding Wright's opinion is rejected.

**VI.    Feather removal process.**

As explained above, the process by which S&R employees removed feathers has nothing to do with how or why the floor collapsed. It is also not relevant that the "molting" process, during which the birds lose their feathers, is illegal in Germany. Essentially, Meller is attempting to confuse the relevant issue in this case and blame S&R for allowing/requiring its employees to pick feathers on the catwalk. The catwalk was built, or should have been built, so *people can walk on it*. All that matters is *whether* the catwalk collapsed because of a product defect, not *why* Alcala was walking on the catwalk in the first place. Contributory negligence or "intended use"

- 5 -

may be an issue, *see, e.g., Green v. Smith & Nephew AHP, Inc*, 629 N.W.2d 727, 747 (Wis. 2001), but as the Court has commented before, a floor should not collapse under the weight of just one man.

## VII.   Absence of prior incidents.

Evidence of the lack of prior accidents is "only admissible when the party seeking to introduce the evidence establishes that the lack of accidents was in regard to products that are 'substantially identical to the one at issue and used in settings and circumstances sufficiently similar to those surrounding the machine at the time of the accident to allow the jury to connect past experience with the accident sued upon.'" *Klonowski v. Int'l Armament Corp.*, 17 F.3d 992, 996 (7th Cir. 1994) (quoting *Walker v. Trico Mfg. Co., Inc.*, 487 F.2d 595, 599 (7th Cir. 1973)). In Wisconsin, this evidence is only "slightly probative" and "generally held inadmissible because of its insignificant probative qualities and its tendency to introduce a multitude of collateral inquiries." *Id.* (quoting *Hannebaum v. Direnzo & Bomier*, 469 N.W.2d 900 (Wis. Ct. App. 1991)).

Most of Meller's products are sold in Europe. Thus, Meller cannot establish similar use because molting is illegal in Europe, so workers do not pick feathers from the belts as Alcala was doing when he fell. Moreover, Meller admits that "[e]very type of equipment is measured-

- 6 -

made, it's very individual. And of course the customers have completely different requirements." Jan Kreyer Dep. at 22. Finally, at some point Meller "started ordering equipment of much inferior quality," skimping on "the thickness of the steel." Frank Schimpf Dep. at 49. Therefore, Meller cannot establish a safety record in the context of substantially similar products.

## VIII.  Meller's expert did not inspect the accident site.

Dr. Karvelis has a medical condition that causes the spontaneous appearance of open cuts on his feet and fingers. As a result, Karvelis was unable to inspect the accident site because the presence of open cuts violates S&R's biosecurity protocols. Karvelis sent associates in his stead to conduct the inspection. By this motion, Nationwide seeks to bar Meller from suggesting that S&R or Nationwide are to blame for Karvelis not attending the inspection.

In response, Meller states that it should be allowed to raise the issue if Nationwide attempts to undermine Karvelis' credibility for not personally inspecting the site. The parties seem to agree that Karvelis should be allowed to explain why he did not personally inspect the site. Nationwide suspects gamesmanship, particularly because Meller never sought any sort of accommodation for Karvelis' condition. Even so, the

Court sees little harm in the parties going back and forth on the reasons that underlie Karvelis' failure to personally inspect the site. This motion is denied.

## IX. Subsequent purchases/continuing business relationship between Meller and S&R.

The implication that S&R would not continue buying Meller products if the catwalk was actually defective is exceedingly weak in this case: the parties have a long-standing business relationship that goes back years; the subsequent purchases are of different types of products; and S&R received assurances from Meller that it would provide higher-quality products after the accident. Therefore, evidence of S&R's post-accident purchases from Meller are excluded as irrelevant and due to the danger that that such evidence will obfuscate or confuse the salient and primary issues in this case. Fed. R. Evid. 401, 403.

## X. – XI. Fault attributed to Nationwide; unemployment benefits.

Meller does not oppose these motions, which are granted.

## XII. Testimony of Josh Jones.

Nationwide seeks to preclude the possibility that Meller will move to read Jones' deposition testimony into the record, as opposed to calling him to testify as a live witness. The Court cannot prejudge the possibility that,

- 8 -

for whatever reason, Meller might be entitled to use Jones' deposition testimony at trial. *See* Fed. R. Civ. P. 32(a)(4); Fed. R. Evid. 804. Therefore, this motion is denied as premature.

## XIII. Prejudicial labeling of S&R's workforce, including Alcala.

Meller agrees that it will not cast aspersions on Alcala because of his race or ethnicity. At the same time, Alcala's work ethic is relevant to whether he mitigated his damages. The issue is also relevant to the extent that Alcala was malingering, faking or exaggerating the extent of his injuries. On that understanding, Nationwide's motion is granted.

## XIV. Speaking German at trial.

Nationwide argues that defense counsel, who speaks German, should be ordered not to speak German with witnesses from the time that the witness has been called to the stand until the time that the witness is released. This is inappropriate because Meller is a German company and its representatives are native German speakers. Counsel obviously has a duty to communicate with his clients. Meller's counsel agrees not to address the Court, opposing counsel, the jury or court staff in German. Meller agrees that it will have a German interpreter at trial.

## XV. Errata sheet of Jan Kreyer.

Nationwide joins the separate motion filed by Alcala, which will be

- 9 -

addressed *infra*.

**XVI.  Settlement offers and mediation.**

Meller agrees to an order barring the parties and their counsel from discussing the fact or terms of settlement offers or mediation.

**XVII. Wealth and size of parties.**

Meller agrees to an order prohibiting comment about the wealth and size of the parties and S&R.

**XVIII.  Motions and pleadings.**

Nationwide requests an order prohibiting Meller from mentioning or discussing the any of the pleadings, motions and orders in this case. No rule of evidence bars the admission or use of pleadings at trial. Absent a more specific argument about how a particular pleading is irrelevant or prejudicial, this motion must be denied.

**XIX.  Evidence not previously disclosed.**

The Court declines Nationwide's request to issue a preemptive order pertaining to something that may or may not happen.

**XX.  Future motions.**

Nationwide reserves its right to file motions with respect to exhibits or witnesses that Meller may call at trial. This isn't a motion so much as it is a declaration. The Court expresses no opinion on this issue, although it

does note that the deadline for filing motions *in limine* has passed.

**Alcala's motions *in limine***

## I.   Errata sheets.

Alcala moves to strike errata sheets submitted by Meller employee Dirk Lohr, an assembly manager, and Jan Kreyer, Meller's general manager.

Rule 30(e) provides that on "request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available" in which to "review the transcript or recording" and "if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Under this rule, a "change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'" *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000). The only exceptions are when the errata sheet "contradicts prior deposition testimony in order to 'clarify ambiguous or confusing deposition testimony,' or when the subsequent conflicting information is 'based on newly discovered evidence.'" *In re Moore v. Dixon*, No. 06-C-0321, 2007 WL 4376211, at *2 (E.D. Wis. Dec. 12, 2007) (quoting

- 11 -

*Adelman-Tremblay v. Jewel Cos., Inc.*, 859 F.2d 517, 520 (7th Cir. 1988));
*see also Yow v. Cottrell, Inc.*, No. 3:04-cv-888-DRH, 2007 WL 2229003, at \*4
(S.D. Ill. Aug. 2, 2007).

As an initial matter, Meller argues that Alcala's motion is barred
because Lohr and Kreyer are German nationals, and as a result, the taking
of evidence is governed by the Hague Convention, not the Federal Rules of
Civil Procedure. To the contrary, the Convention "is not mandatory and
serves only as a permissive supplement to the Federal Rules of Civil
Procedure." *Schindler Elevator Corp. v. Otis Elevator Co.*, 657 F. Supp. 2d
525, 528 (D.N.J. 2009) (citing *Societe Nationale Industrielle Aeropspatiale
v. U.S. Dist. Ct. for the So. Dist. of Iowa*, 482 U.S. 522, 536 (1987)). Meller
argues that Alcala's motion should be denied under principals of comity
because Lohr and Kreyer are unfamiliar with the American discovery
process. They were, however, familiar enough to submit errata sheets in
the first instance. Indeed, by attempting to use the procedure set forth in
Rule 30(e), Lohr and Kreyer retroactively consented to the Federal Rules
governing their depositions, not the Hague Convention.

The Court reviewed the errata sheets and agrees that they must be
struck. For example, Kreyer's errata sheet offers the following change:

Q.   What is the load capacity for the supporting structures

- 12 -

for the grating?

A.    I can't tell.

Change:    "As stated, at least 500 kg per Exhibit, '4'."

Reason for Change:    "The correct answer is."

*See also* Lohr's errata sheet, page 90, line 9:

Q.    Have you ever seen a contract between Meller and S&R
that in any way, shape, or form defined the scope of the
work?

A.    No.

Change:    "But from my visit to S&R, I saw it was a typical
Meller scope of work. Meller's design work ends at
the end of the cage footprint."

Reason for Change:    Correction of any misunderstanding.

These changes, like all of the other changes described in Alcala's

memorandum, are clear changes of substance. At bottom, Rule 30(e)

"cannot be interpreted to allow one to alter what was said under oath. If

that were the case, one could merely answer the questions with no thought

at all then return home and plan artful responses. Depositions differ from

interrogatories in that regard. A deposition is not a take home

examination." *Burns v. Bd. of Cnty. Comm'rs of Jackson Cnty.*, 330 F.3d

1275, 1282 (10th Cir. 2003).

Meller argues that Alcala isn't prejudiced because Alcala can cross-

- 13 -

examine Lohr and Kreyer about the changes when they take the stand at trial. This argument, in many respects, elides the purpose of depositions in the first instance, which is to "find out what a witness saw, heard, or did – what the witness thinks." *Hall v. Clifton Precision, Inc.*, 150 F.R.D. 525, 528 (E.D. Pa. 1993). In other words, the witness "comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record." *Id.* At trial, the witnesses can explain, or attempt to explain, why their original sworn answers were wrong.

## II. Meller supplied the catwalk.

The Court will discuss this motion in connection with Meller's second motion in limine, *infra*.

## Meller's motions *in limine*

## I. Evidence concerning dismissed claims.

Meller asks the Court to exclude evidence regarding Nationwide's breach of warranty and implied workmanship claims. This motion is granted, on the understanding that evidence relevant to those claims may be relevant and admissible with respect to the remaining claims in this case.

- 14 -

## II. Henning Construction.

One argument advanced by Meller is that a company called Henning Construction supplied the portion of the catwalk where Alcala fell. Meller argues that evidence regarding Henning Construction should be excluded because Nationwide obtained it after the close of fact discovery. In fact, Nationwide sought discovery from Henning well before the close of discovery, but Henning did not produce the documents until after discovery had closed. Nationwide cannot be faulted under these circumstances. Therefore, Nationwide did not violate the discovery deadline, and there is good cause to extend the deadline in any event due to Henning dragging its feet. *See United Consumers Club, Inc. v. Prime Time Mktg. Mfg., Inc.*, 271 F.R.D. 487, 495 (N.D. Ind. 2010) ("Generally, the discovery deadline specifies the date on which all discovery must be completed, therefore, any document requests must be served at least 30 days prior to the discovery deadline").

Meller also argues that Wright's expert opinion should be excluded as untimely. This report was disclosed only eight days after the expert disclosure deadline and well before the deadline for conducting expert discovery. Meller was not prejudiced by this minimal delay. Fed. R. Civ. P. 37(c)(1).

- 15 -

Finally, in connection with the Henning Construction evidence, Alcala filed an untimely motion seeking to preclude Meller from arguing that it did not supply the catwalk which failed and caused his injuries. Alcala complains that Meller hasn't produced any evidence on this issue. This argument inverts the burden of proof. Meller doesn't have to prove that it *didn't* provide the catwalk. The Court will not preclude Meller from making an argument and putting the plaintiffs to their burden of proof.

## III. Expert opinions not included in plaintiffs' expert reports.

Meller argues that expert testimony at trial must be restricted to that which was specifically disclosed in an expert report. In particular, Meller objects to the possibility that Wright will testify outside the scope of his report. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them," in addition to "the facts or data considered by the witness in forming them").

Despite this seemingly mandatory language, the "purpose of these reports is not to replicate every word that the expert might say on the stand. It is instead to convey the substance of the expert's opinion (along with the other background information required by Rule 26(a)(2)(B)) so that the opponent will be ready to rebut, to cross-examine, and to offer a

- 16 -

competing expert if necessary." *Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009). Wright's report easily meets this requirement. Indeed, by agreement of the parties, Wright's deposition exceeded the seven hour limit for standard depositions. Fed. R. Civ. P. 30(d)(1). Meller was given every opportunity to fully explore the basis for Wright's opinion, and as a result, Meller cannot claim that it was prejudiced by that which is supposedly missing from Wright's report. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (listing factors to guide district court's discretion, including "the prejudice or surprise to the party against whom the evidence is offered").

## IV.    Meller's state of mind.

Meller argues that the Court should bar expert testimony regarding Meller's knowledge or state of mind as to the design, testing, manufacturing, or installation of the subject catwalk. This motion is granted. *See, e.g., Tyree v. Boston Sci. Corp.*, 54 F. Supp. 3d 501, 564 (S.D. W. Va. 2014); *Kruzska v. Novartis Pharm. Corp.*, 28 F. Supp. 3d 920, 937 (D. Minn. 2014) (expert testimony on "the intent, motives or state of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise").

- 17 -

## V. Industry standards, codes, and regulations.

Meller anticipates that Nationwide's witnesses, particularly Wright, will reference certain industry standards it thinks are irrelevant to the case at bar. The Court already addressed this issue in the context of Meller's *Daubert* motion to exclude Wright's testimony. Meller's motion is denied because, as previously stated, "Meller's arguments about the inapplicability of various standards is the proper subject of cross-examination at trial." 2015 WL 998331, at *6.

The Court also rejects Meller's attempt to categorically bar reference to standards, codes, and regulations promulgated after the catwalk was purchased and installed. An expert may or may not have good reasons for referencing such standards. The Court is open to re-visiting this issue in the context of a more specific offer of proof.

## VI. Hearsay statements from S&R employees.

Meller seeks to exclude the following out-of-court statements: (1) written and recorded statements by an eyewitness to the accident, Jesus Rivera, who cannot be located and will be unavailable at trial; (2) recorded statements by Alcala and his supervisor, Thomas Mendez, both of whom *will* be available at trial; and (3) a report of S&R's investigation into the accident. Rivera's initial written statement was created within hours of the

- 18 -

accident. The other documents were created later during the course of the investigation.

Plaintiffs argue that these statements are admissible under the business records exception. Fed. R. Evid. 803(6). Under this rule, a "record of an act, event, condition, opinion, or diagnosis" is excluded from the rule against hearsay – regardless of whether the declarant is available as a witness – if the following requirements are met:

(A) the record was made at or near the time by – or from information transmitted by – someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, … and

(E) the opponent does not show that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness.

Thus, a party establishes a foundation for admission of business records "when it demonstrates through the testimony of a qualified witness that the records were kept in the course of a regularly conducted business activity, and that it was the regular practice of that business to make such records." *United States v. Given*, 164 F.3d 389, 394 (7th Cir. 1999).

- 19 -

Plaintiffs argue that they can lay the appropriate foundation through the testimony of Josh Jones, S&R's safety coordinator, and Lee Borneman, S&R's Director of Quality and Safety. Nationwide also cites the affidavit of Renata Schuch, the adjuster at Nationwide who handled Alcala's worker's compensation claim. ECF No. 30-2.[1]

According to Schuch, an "injured worker's statement is taken as a matter of routine with perhaps no purpose other than to conduct due diligence, document the file and ensure that the information is later available should the need arise." Schuch Aff., ¶ 8. The Alcala injury was not routine: "in certain other cases, *including particularly this case* where at all times the circumstances of the injury raised the prospect of litigation over [Nationwide's] subrogation interests, the primary purposes of obtaining the injured worker's statements are more varied and *the prospect of litigation took on a fundamental level of importance.*" *Id.*, ¶ 9 (emphases added). Therefore, the investigation was conducted, at Nationwide's behest, in anticipation of the instant litigation, not as a matter of normal business routine. "[T]he opponent might argue that a record was prepared *in*

_____

[1] This affidavit was originally provided in an attempt to show that the incident report and the recorded witness statements were not discoverable as protected work product. The Court disagreed and granted Meller's motion to compel. ECF No. 33. Rivera's post-accident, pre-investigation witness statement was not subject to this motion. ECF No. 30 at 2.

*anticipation of litigation and is favorable to the preparing party* without needing to introduce evidence on the point." Advisory Committee Notes, 2014 Amendments, Subdivision 6 (emphasis added).

As to the incident report, Schuch expressly states that it was not "routine." Instead, it was "created expressly for the purposes of imminent litigation against [Meller] in this lawsuit." Shuch Aff., ¶ 13. Jones testified, moreover, that "what we were looking for was to blame the [flooring of the] barn," that S&R was "trying to use Meller as a scapegoat," and that S&R sought to avoid red-flagging OSHA violations. Jones Dep. at 55, 191. 75-76. Accordingly, the report is untrustworthy and does not fit within the exception set forth in Rule 803(6). Alcala's statement stands on slightly different footing because of his status as the injured worker, but even so, the statement is tainted because Nationwide anticipated litigation from the outset of its investigation. Schuch Aff., ¶ 5 ("At all times during [Nationwide's] investigation, it was therefore anticipated that litigation would ensue"). The statements taken from Rivera and Mendez were unquestionably non-routine. *Id.*, ¶ 15 ("It is not routine for [Nationwide] to take a co-employee's statement with respect to workers' compensation claims").

That leaves Rivera's statement that was given after the accident but

- 21 -

before the investigation commenced. This statement, made within two hours of the accident, is on a document entitled "Employee Injury/Incident Statement" on S&R Egg Farm letterhead. ECF No. 104-3. The form includes the following categories to be filled-in: name, date prepared, date incident occurred, and time. In addition, the form includes directions along with a list of questions to be answered by the individuals filling it out. This document more clearly fits within the realm of Rule 803(6), and it appears that Jones and Borneman can lay the appropriate foundation. Therefore, it is Meller's burden to demonstrate a lack of trustworthiness. Fed. R. Evid. 803(6)(E).

On that front, Meller notes that the document is in English, whereas Rivera spoke only in Spanish and gave the statement through a non-professional interpreter; Alcala did not remember Rivera being present until after the accident; and Meller traced Rivera's social security number, produced by S&R, to another individual entirely. Alcala counters that there are multiple bilingual speakers at S&R who assist in translating between English-speaking and Spanish-speaking employees; Alcala's inability to remember Rivera's presence is not surprising given that he fell from a second-story catwalk to a concrete floor; and Rivera made the statement without any influence of legal counsel, insurance representative, or

- 22 -

knowledge of a pending lawsuit. Despite Meller's speculation that Rivera did not witness the accident, Rivera's presence is corroborated by other testimony in this case. Borneman Dep. at 88; Mendez Dep. at 33. Therefore, Meller failed to meet its burden of demonstrating that Rivera's statement was untrustworthy.

Finally, plaintiffs argue that the statements taken during the investigation can be admitted as recorded recollections, which is a record that (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge. Fed. R. Evid. 803(5). This exception applies to Alcala and Mendez because they will be testifying at trial. The exception also applies to the report to the extent that it may be used to refresh the recollection of its drafters, Jones and Borneman. Therefore, these documents can be read into evidence but not received as exhibits unless offered by the adverse party. *Id.* Rivera's statement is not admissible under this rule because he is unavailable and will not be testifying at trial. *See, e.g., Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 505 F. Supp. 1190, 1228 n.48 (E.D. Penn. 1980) ("Rule 803(5) applies only to the recorded recollection of a witness who is present and

- 23 -

testifies, and not to the recorded recollection of an absent declarant"). Of course, this analysis does not affect the Court's ruling that Rivera's pre-investigation statement is admissible under Rule 803(6).

## VII. Post-accident remedial measures.

After the accident, Meller sent additional crossbeams to reinforce the catwalk, which S&R installed. Meller argues that this evidence is barred by Rule 407, which provides that when "measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction." The primary ground for exclusion "rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." *Lolie v. Ohio Brass Co.*, 502 F.2d 742, 744 (7th Cir. 1974).

Rule 407 does not bar evidence of remedial measures taken by a non-party. *Diehl v. Blaw-Knox*, 360 F.3d 426 (3d Cir. 2004); *Lolie*, 502 F.2d at 744 (rule does not apply "when the evidence is offered against a party … which did not make the changes"). Therefore, plaintiffs can offer evidence that S&R installed the crossbeams because S&R is not a party to this lawsuit. Meller argues that S&R should be considered a party because of

- 24 -

the subrogor-subrogee relationship between S&R and Nationwide. This insight does not help Meller because the rule applies to "evidence of subsequent remedial measures taken by the party *against whom the post-accident modification is offered.*" *Sell v. Ingersoll-Rand Co.*, 136 Fed. App'x 545, 546 (3d Cir. 2005) (emphasis added). S&R's remedial measures are being offered against Meller, not S&R/Nationwide.

While Rule 407 does not bar evidence that S&R installed the crossbeams, it does bar evidence of Meller's subsequent remedial measures, i.e., that Meller provided the crossbeams. There are, however, certain exceptions in the rule that may become relevant during the course of trial. Rule 407, second paragraph ("the court may admit this evidence for another purpose, such as impeachment or – if disputed – proving ownership, control, or the feasibility of precautionary measures"). The Court reserves ruling on the possibility that this evidence could meet one of these exceptions.

## VIII. Out-of-court statements by Meller employees.

Meller moves to exclude out-of-court statements by Kreyer concerning Meller's responsibility for the accident and the cheapening of steel used in Meller's products. Meller argues that these statements should be excluded as hearsay. Party-opponent statements are not hearsay. Fed.

- 25 -

R. Evid. 801(d)(2).

Meller also argues that Kreyer's statements pertaining to Meller's responsibility were made in connection with post-accident remedial measures and thus are excludable under Rule 407. For example, S&R owner Frank Schimpf testified that Kreyer told him that it was Meller's "responsibility to take care of it," i.e., to fix the platform that caused the injury. Rule 407 applies to conduct, not statements. Kreyer's acknowledgement that there was a problem which needed fixing is a party-opponent admission.

Meller also moves to exclude statements made by Dirk Lohr that the area where Alcala fell was a catwalk supplied by Meller and that the installation of additional crossbeams following the accident rendered the structure safer. Like Kreyer's statements, these are party-opponent admissions, not hearsay, nor are they evidence of subsequent remedial measures.

Finally, Meller moves to exclude statements made by Walter Schmidt, a former Meller employee, regarding the cheapening of steel. Nationwide argues that Schmidt's statements should be admitted pursuant to the residual hearsay exception. Fed. R. Evid. 807. This exception has five requirements: (1) circumstantial guarantees of trustworthiness; (2)

- 26 -

materiality; (3) probative value; (4) the interests of justice; and (5) notice. *United States v. Hall*, 165 F.3d 1095, 1110 (7th Cir. 1999).

Meller argues that the statements are untrustworthy because Schmidt has an axe to grind against his former employer. Nationwide counters that Schmidt's comments about cheaper steel are trustworthy because they corroborate Kreyer's comments on the subject. Setting aside trustworthiness, the proposed statement must be "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts …" Fed. R. Evid. 807(a)(3). Schmidt's statements about steel quality are not more probative than Kreyer's statements about the same subject. Therefore, Schmidt's hearsay statements are not admissible under Rule 807.[2]

## IX. Size of Meller's law firm and the residency of its attorneys.

Alcala does not oppose this motion. Nationwide "conditionally opposes" the motion, arguing that the Court should reserve ruling until such time as a ruling may be needed. The Court cannot conceive a scenario under which this information could be relevant information at trial. The

---

[2] Alcala argues that Schmidt's statements should be admissible because Schmidt is a German citizen beyond the Court's subpoena power. Fed. R. Evid. 804. Schmidt's statements do not meet any of the exceptions for the admission of testimony by an unavailable witness, e.g., Rule 804(b)(1) (Former Testimony), Rule 804(b)(2) (Statement Under the Belief of Imminent Death).

- 27 -

motion is granted.

## X.     Discovery disputes.

Meller moves to exclude reference to discovery disputes or other similar circumstance that creates the impression that it did not comply with discovery requirements. As with Nationwide's motion number 18, no rule of evidence precludes the admission of such evidence. Absent a more specific argument about how a particular pleading is irrelevant or prejudicial, this motion must be denied.

## XI.     Sequestration.

In reply, Meller clarifies that it only seeks sequestration of non-party fact witnesses. Fed. R. Evid. 615. To this extent, Meller's request is granted.

## XII.     Requiring Nationwide's expert to answer the question posed.

Meller anticipates that Wright, Nationwide's engineering expert, will provide non-responsive, evasive, and gratuitous answers at trial. The Court can deal with pertinent objections as they arise during trial.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1.    Nationwide's motions in limine [ECF No. 105] are **GRANTED-IN-PART** and **DENIED-IN-PART**;

2.    Alcala's first motion in limine [ECF No. 99] is **GRANTED**;

3.    Alcala's second motion in limine [ECF NO. 107] is **DENIED**;

4.    Meller's motions in limine [ECF No. 102] are **GRANTED-IN-PART** and **DENIED-IN-PART**;

5.    On **June 8, 2016** at **10:00 a.m. (CST)**, the Court will initiate and conduct a telephone conference to schedule this matter for trial.

Dated at Milwaukee, Wisconsin, this __5th__ day of May, 2016.

**SO ORDERED:**

_Rudolph X Randa_

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**

- 29 -